UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDE BENT,<br><br>   Plaintiff,<br><br> v.<br><br>WILLIAM P. BARR, et al.,<br><br>   Defendants. | Case No. 19-cv-06123-DMR<br><br>**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. Nos. 1, 5 |

  Petitioner Claude Bent is a noncitizen from Jamaica who is currently in Immigration and Customs Enforcement ("ICE") custody pending the conclusion of his removal proceedings. On September 26, 2019, Bent filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asks the court to order his release from custody or to direct the United States Department of Justice Executive Office for Immigration Review ("EOIR") to provide him with an individualized custody hearing. [Docket No. 1 ("Petition").] He also filed a motion for a temporary restraining order ("TRO") seeking to enjoin his continued detention without a custody hearing until the court decides his habeas petition. [Docket No. 1-1 ("Mot.").] The court held a hearing on November 14, 2019. Following the hearing, the court ordered additional briefing on Bent's due process claim, (Docket No. 16), which the parties filed. [Docket Nos. 17 ("Pet. Supp. Br."), 18 ("Resp. Supp. Br.").]

  Upon reviewing the parties' briefs and hearing oral argument, the court denies Bent's petition. The motion for a TRO is denied as moot.

**I. BACKGROUND**

  Bent was born in Jamaica and is 58 years old. Petition ¶ 6. He came to the United States as a lawful permanent resident at age 18. *Id.* In 2006, Bent was convicted of voluntary manslaughter and attempted murder in California state court. Neither party disputes that the attempted murder

conviction involved an adult victim. Bent was sentenced to just over thirteen years for both offenses. *Id.* ¶ 14. Upon serving his term of imprisonment, Bent was immediately detained by ICE. *Id.*

### A. Removal Proceedings

On July 20, 2016, the DHS commenced removal proceedings, asserting that Bent's attempted murder conviction constituted an aggravated felony as defined under 8 U.S.C. §§ 1101(a)(43)(A), (U), and therefore subjected him to deportation. Petition ¶ 15. *See* 8 U.S.C. § 1226(c)(1)(B) (stating that noncitizens convicted of an aggravated felony are deportable). The Immigration Judge ("IJ") concluded that Bent was removable for committing an aggravated felony. Bent appealed to the Board of Immigration Appeals ("BIA"), where he argued that he was not deportable for the attempted murder conviction because California construes that crime more broadly than the analogous crime listed in the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(43)(A). *See Bent v. Barr*, 775 Fed. App'x 281, 282-3 (2019). The BIA rejected Bent's argument and held that he was removable because "the full range of conduct punishable as 'murder' under section 187(a) of the California Penal Code corresponds categorically to generic 'murder' under [8 U.S.C. § 1101(a)(43)(A)]." *Id.* Bent appealed to the Ninth Circuit.

On appeal, the Ninth Circuit examined the "categorical approach," which is used to determine whether a state offense is comparable to an aggravated felony as listed in the INA. The categorical approach looks to whether "the state statute defining the crime of conviction categorically fits within the 'generic' federal definition of a corresponding aggravated felony." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (citations and internal quotation marks omitted). Because the relevant offenses "must be viewed in the abstract" based on a purely statutory reading, the facts underlying the noncitizen's actual conviction are irrelevant to the analysis. *See id.* In Bent's case, the Ninth Circuit determined that the BIA "did not consider whether generic INA murder encompasses feticide, which is punishable conduct under California's murder statute." *Bent*, 775 Fed. App'x at 283. It remanded the case to BIA to consider whether attempted murder under the INA includes feticide. *Id.* BIA issued a decision on November 19, 2019. [Docket No. 19, Ex. 1.] It found that section 187(a) is more broad than general murder under the INA, but that the statute is divisible into two separate offenses, "murder of a human being" and "murder of a fetus." *Id.* at

6. It also found that "murder of a human being" is a categorical match to generic murder under the INA, which may support that Bent is removable based on his conviction for the murder of an adult. *Id.* However, the BIA remanded the issue to the IJ because there were outstanding evidentiary issues. *Id.* The final outcome of Bent's removability proceedings therefore remains pending.

### B. Requests for Bond Hearings

On February 1, 2017, Bent was denied bond. Maldonado Decl. ¶ 9. He requested a new bond hearing, which was held on November 29, 2017. *Id.* ¶ 16. He was again denied bond. In a written opinion dated January 5, 2018, the IJ found that "based on the evidence submitted, the Department has demonstrated by clear and convincing evidence that [Bent] poses a danger to the community and a flight risk." *Id.* at ¶ 17, Ex. 1. In addition, the IJ found that, based in part on Petitioner's final administrative order of removal to Jamaica, "the Department has met its burden to prove [Petitioner] would pose a flight risk if released." *Id.*

Bent requested another bond hearing on June 26, 2019 based on materially changed circumstances. Petition ¶ 19. On June 27, 2019, the IJ denied the request. The IJ issued a memorandum decision on August 14, 2019, which explained that Bent's request for a bond hearing was denied for two reasons. Mot., Ex. C. The IJ held that Bent was no longer eligible for a bond hearing after the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), because Bent had failed to demonstrate that "the Court has jurisdiction over a subsequent custody redetermination hearing." *See id.* The IJ also found that Bent "failed to show materially changed circumstances that would alter the Court's previous findings," and specifically stated that "the change in the case's posture [based on the Ninth Circuit remand] is not a circumstance that would materially change the Court's previous findings that [Petitioner] would pose a danger to society if released." *Id.*

At this time, Bent remains detained at the Mesa Verde ICE Processing Center. Maldonado Decl. ¶ 27.

## II. PETITION FOR WRIT OF HABEAS CORPUS

### A. Administrative Exhaustion

Respondents argue that the court should dismiss Bent's habeas petition because he has not

3

exhausted his remedies before the BIA. Under 28 U.S.C. § 2241(c)(3), a federal district court is authorized to grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006); *see also Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003) (holding that a "petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal"). Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citations omitted)). However, "even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted)).

In this case, Bent requested another bond hearing on June 26, 2019. The IJ denied the request on June 27, 2019 and issued a memorandum decision on August 14, 2019. Petition ¶¶ 19-20; Mot., Ex. C. Bent appealed that decision to the BIA in early July 2019.[1] Bent represents that BIA appeals "often take four months or more," *id.* ¶ 20, and the associated delays will prevent efficacious relief. Respondent represents that the appeal is "likely to be decided within a couple of months" and could grant the same relief that Bent is requesting here. Opp. at 6. At the hearing, counsel for both parties

---

[1] Bent's counsel was unable to identify the exact date at the hearing.

4

represented that the BIA decision on Bent's bond request would likely be decided within six months; however, they agreed that there were a "lot of variables" that may shorten or extend that time.

Currently, it has been approximately nine months since Bent filed an appeal regarding the denial of his bail. Given that the BIA proceeding has already exceeded both parties' estimation of when a decision could be expected, and that there is nothing before the court that indicates a decision will be shortly forthcoming, the court finds that Bent's administrative remedies have been inadequate. Therefore, waiver of prudential exhaustion is appropriate in this case.

### B. Entitlement to a Bond Hearing

#### 1. Legal Framework

The INA provides a "complex statutory framework of detention authority" codified at 8 U.S.C. §§ 1226 and 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Where a noncitizen falls within the statutory scheme "can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id.* Section 1226(a) provides the Attorney General with discretionary authority to arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *Prieto-Romero*, 534 F.3d at 1057. A noncitizen detained pursuant to section 1226(a) can appeal ICE's initial custody determination to an immigration judge, who is authorized to "release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. § 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19(a) (granting immigration judges jurisdiction to review custody and bond determinations). By contrast, section 1226(c) mandates detention for noncitizens who have committed certain criminal offenses. 8 U.S.C. § 1226(c). A noncitizen subject to mandatory detention under section 1226(c) can only be released for witness protection purposes and if the noncitizen "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2).

Since 2001, the Supreme Court and the Ninth Circuit have "grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v.*

*Hayes* ("*Rodriguez I*"), 591 F.3d 1105, 1114 (9th Cir. 2010). In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court considered challenges to the prolonged detention of two noncitizens who were being held in the post-90-day removal period pursuant to section 1231(a)(6). The government had been unable to effectuate their removal because none of the available countries of removal were willing to accept them. *Id.* at 684-86. The Court held that section 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal period detention to a period reasonably necessary to bring about that alien's removal from the United States," and "does not permit indefinite detention." *Id.* at 689. The Court found that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," given the Fifth Amendment's Due Process Clause, which "forbids the Government to depriv[e] any person . . . of . . . liberty . . . without due process of law." *Id.* at 690 (quotation omitted). Relying on the canon of constitutional avoidance, the Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 690, 699. Therefore, after a presumptively reasonable six-month period of post-removal period detention under section 1231(a)(6), a noncitizen is entitled to release if he or she "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701, 121 S.Ct. 2491.

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court held that mandatory detention under section 1226(c) for the "brief period necessary" to complete removal proceedings is "constitutionally permissible" under the Fifth Amendment. The Supreme Court cautioned, however, that such detention has "a definite termination point" and typically "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 529–30. *Demore* accordingly concluded that the six-month detention at issue constituted reasonable "temporary" confinement. *Id.* at 530–31.

Five years after *Demore*, the Ninth Circuit held that the "prolonged detention" of a noncitizen under section 1226(a) "without adequate procedural protections," such as access to a bond hearing before an immigration judge, "would raise serious constitutional concerns." *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942, 950 (9th Cir. 2008) ("*Casas*"). In *Casas*, a lawful permanent resident who had been detained for nearly seven years under sections

6

1226(c) and 1226(a) sought habeas relief while his petition for review of his removal order was pending. *Id.* at 945-48. Given the constitutional concerns, the Ninth Circuit construed section 1226(a) to require the government to provide a lawful permanent resident with "a neutral forum in which to contest the necessity of his continued detention," at which the government must establish that the individual poses a flight risk or a danger to the community in order to justify continued detention. *Id.* at 949, 951. In *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), the Ninth Circuit clarified that, in bond hearings held under *Casas* ("*Casas* hearings"), "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." *Id.* at 1203.

In 2015, the Ninth Circuit considered the procedural protections available to noncitizens detained under 8 U.S.C. §§ 1225(b) and 1226(c). *See Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060 (9th Cir. 2015), *reversed by Jennings v. Rodriguez*, 138 S.Ct. 830 (2018). In *Rodriguez III*, a certified class of noncitizens challenged their prolonged detentions pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without the provision of individualized bond hearings.[2] 804 F.3d at 1065. Following the entry of a preliminary injunction, which was affirmed on appeal, *see Rodriguez v. Robbins* ("*Rodriguez II*"), 715 F.3d 1127 (9th Cir. 2013), the district court granted summary judgment to the class and entered a permanent injunction requiring the government to

---

[2] Section 1225(b) "applies to 'applicants for admission' who are stopped at the border or a port of entry, or who are 'present in the United States' but 'ha[ve] not been admitted.'" *Rodriguez III*, 804 F.3d at 1081 (quoting 8 U.S.C. § 1225(a)(1)). "The statute provides that asylum seekers 'shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)). As to all other such applicants for admission, the statute provides for mandatory detention "if the examining immigration officer determines that [the individuals] seeking admission [are] not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

As discussed above, 8 U.S.C. § 1226(c) "requires that the Attorney General detain any non-citizen who is inadmissible or deportable because of his criminal history upon that person's release from imprisonment, pending proceedings to remove him from the United States." *Rodriguez III*, 804 F.3d at 1078, n.8. Detention under section 1226(c) is mandatory and individuals detained under that section may be released only if the government deems it "necessary" for witness protection purposes. *Id.* at 1078 (citing 8 U.S.C. § 1226(c)(2)).

Section 1226(a) provides that a noncitizen "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Section 1231(a) governs detention of noncitizens following issuance of a final removal order.

provide a bond hearing to any class member subject to detention longer than six months. 804 F.3d at 1065. The government was ordered to provide each detainee with a bond hearing by his or her 195th day of detention, with such hearings occurring automatically after notice. *Id.* at 1072. The district court also required the government to prove by clear and convincing evidence that the detainee was a flight risk or a danger to the community in order to justify the denial of bond. *Id. at 1071*. The district court declined to order other procedural requirements requested by the class. *Id.* The government appealed from the entry of the permanent injunction, and the class cross-appealed the district court's order as to the procedural requirements for bond hearings. Id. at 1072-73.

The Ninth Circuit affirmed in part and reversed in part. In relevant part, the court affirmed summary judgment and the entry of the permanent injunction as to the section 1226(c), 1225(b), and 1226(a) subclasses. Relying on the canon of constitutional avoidance, the court construed sections 1225(b) and 1226(c) as imposing a six-month time limit on detention, after which the government may continue detention only under the authority of section 1226(a). *Id.* at 1079, 1082. The court re-affirmed its decision in *Casas* that a noncitizen "subjected to prolonged detention under § 1226(a) is entitled to a hearing to establish whether continued detention is necessary because he would pose a danger to the community or a flight risk upon release." *Id.* at 1085 (citing *Casas*, 535 F.3d at 949-52). The court thereby affirmed the district court's permanent injunction requiring the government to hold bond hearings every six months for noncitizens detained pursuant to sections 1226(c), 1225(b), and 1226(a). *Id.* at 1090. The court also affirmed the requirement that the government "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing." *Id.* at 1087 (quoting *Rodriguez II*, 715 F.3d at 1135 (quoting *Singh*, 638 F.3d at 1203)).

The Supreme Court reversed *Rodriguez III* in *Jennings*. The Court found that the Ninth Circuit had misapplied the canon of constitutional avoidance as to sections 1225(b), 1226(c), and 1226(a), and determined that "its interpretations of the three provisions at issue . . . are implausible." 138 S.Ct. at 842. As to section 1225(b), which "applies primarily to aliens seeking entry into the United States," the Court noted that the statute divides applicants into two categories: section 1225(b)(1) provides that certain noncitizens claiming a credible fear of persecution "shall be

8

detained for further consideration of the application for asylum," while section 1225(b)(2) provides that noncitizens who fall within the scope of that provision "shall be detained for a [removal] proceeding." *Id.* (emphasis added) (quoting 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(2)(A)). The Court found that "[r]ead most naturally, §§ 1225(b)(1) and (b)(2) mandate detention of applicants for admission until certain proceedings have concluded." *Id.* The Court rejected the argument that those provisions contain an implicit six-month limit on the length of detention, observing that "nothing in the statutory text imposes any limit on the length of detention" or "even hints that those provisions restrict detention after six months." *Id.* at 842, 843. As to the canon of constitutional avoidance, the Court held that "[s]potting a constitutional issue does not give a court the authority to rewrite a statute as it pleases . . . [i]nstead, the canon permits a court to 'choos[e] between competing plausible interpretations of a statutory text.'" *Id.* at 843. The Court concluded that sections 1225(b)(1) are 1225(b)(1) are not ambiguous, and that "neither provision can reasonably be read to limit detention to six months." *Id.* at 843-844 (contrasting section 1225(b), which provides that noncitizens "shall be detained" for further proceedings, with section 1231(a)(6), which provides that noncitizens "may be detained" after the completion of the removal period).

Similarly, the Court held that section 1226(c), which applies to noncitizens already present in the United States, could not plausibly be construed to include an implicit six-month time limit on the length of mandatory detention. *Id.* at 846-47. As to section 1226(a), the Court noted that "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." Id. at 847. The Court held that "[n]othing in § 1226(a)'s text . . . supports the imposition" of the procedural protections ordered by the Ninth Circuit—"namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." *Id.*

### 2. Discussion

Bent argues that he is eligible for a third bond hearing on three grounds: (1) that he is not subject to mandatory detention under section 1226(c) because he has raised a "substantial argument" against his removability; (2) that he is not subject to mandatory detention under *Casas*; and (3) that even if he is subject to mandatory detention, "due process demands [he] be given the right to a bond

9

hearing to challenge his prolonged detention." Mot. at 15. The first two arguments are statutory while the third is constitutional.

### a. Statutory Arguments

Bent's first two arguments address whether he is properly classified as subject to mandatory detention under section 1226(c). If he is subject to mandatory detention, then he is not statutorily eligible for a bond hearing because detention under that section may end prior to the conclusion of removal proceedings only under certain conditions that are not at issue in this case. *See Jennings*, 138 S. Ct. at 847. If Bent is instead subject to discretionary detention under section 1226(a), then he may request a subsequent bond hearing but must show "that [his] circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e). The court need not reach the question of whether Bent is subject to discretionary rather than mandatory detention. This is because even assuming (without deciding) that Bent is subject to discretionary detention under section 1226(a), he has not shown that the IJ erred in denying him a new bond hearing. *See Kharis v. Sessions*, 2018 WL 5809432, \*4 (N.D. Cal. November 6, 2018) (stating that a district court has jurisdiction to review an IJ's discretionary bond denial only "where that bond denial is challenged as legally erroneous or unconstitutional").

The record does not contain a written opinion from Bent's initial bond hearing in February 2017. In the opinion following Bent's second bond hearing in November 2017, the IJ denied bond on two grounds: that Bent was a danger to society and that he was a flight risk. *See* Maldonado Decl., Ex. 1 at 3-4. The majority of that opinion is dedicated to examining Bent's criminal history. *See id.* The IJ also found that Bent would pose a flight risk if he were released, given that he was (1) under a final administrative order of removal; (2) he did not have a stable address, residence, or ties to the community; and (3) he would not be motivated to report to immigration authorities. *See id.* at 4. Bent does not argue that the IJ erred in denying his second bond request. In June 2019, Bent requested a third bond hearing solely on the basis that his merits case had been remanded from the Ninth Circuit to the BIA. In denying the request, the IJ concluded that Bent is not eligible for a bond hearing after *Jennings*. Mot., Ex. C, at 1. She further concluded that he did not show a material change in circumstance since his prior hearing in November 2017. Specifically, she found that "the

change in the case's posture is not a circumstance that would materially change the Court's previous findings that the respondent would pose a danger to society if released." *Id.* at 1.

Bent argues that IJ erred in finding that he was not eligible for a new bond hearing because the Ninth Circuit remand of his merits case constitutes a change in material circumstance.[3] He argues that the remand is material to the IJ's previous finding that he is a flight risk because that determination rested in part on the basis that he was under a final order of removal. Reply at 12. According to Bent, the change in the case's procedural posture renders him a lower flight risk since he is now more likely to succeed in his removal case and therefore less likely to avoid adjudication. *See id.* However, even if Bent is correct that the remand of his merits case makes him a lower flight risk, his argument does not address the IJ's prior finding that he is a danger to society. Although an IJ may weigh a "number of factors in determining whether a [detainee] merits release from bond," *In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), the IJ must "first determine[] that the [detainee] does not present a danger to the community." *Matter of Urena*, 25 I. & N. Dec. 140, 141 (BIA 2009). "Only if a [detainee] demonstrates that he does not pose a danger to the community should an Immigration Judge continue to a determination regarding the extent of flight risk posed by the alien." *Id.* It follows that, where an IJ finds that a detainee is a danger to the community, the detainee must show a change in material circumstance that is relevant to the danger assessment. *See Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 144 (D. Mass. 2019) (holding that an IJ's "finding of dangerousness renders irrelevant any complaints [the petitioner] raises about the immigration judge's consideration of his flight risk"). Bent has not articulated any reasons why the status of his merits case is material to whether he is a danger to society.

Accordingly, even assuming without deciding that Bent is subject to discretionary detention under section 1226(a), the IJ did not err in denying Bent's request for a bond hearing because he

---

[3] Bent also argues that the IJ incorrectly determined that he is ineligible for a bond hearing under *Jennings*. According to Bent, that decision was based on the erroneous assumption that he is under mandatory detention pursuant to section 1226(c). Since the court assumes for the purposes of this order that Bent is subject to discretionary detention under 1226(a), Bent's argument on that point is moot.

11

failed to show a material change in circumstance.[4]

### b. Due Process Arguments

*Jennings* only entertained statutory challenges to the INA's detention scheme and remanded the question of whether prolonged detention without an individualized bond hearing violates the due process clause of the Fifth Amendment. After *Jennings*, the Ninth Circuit stated its "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional," but remanded the issue to the district court. *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). Accordingly, there remains "a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional." *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019); *see also Rodriguez v. Nielsen*, No. 18-cv-04187-TSH, 2019 U.S. Dist. LEXIS 4228, at *17 (N.D. Cal. Jan. 7, 2019) ("[A]s matters stand now, there is no controlling precedent for this Court to follow.").

One court in this district has held that detainees are constitutionally entitled to individualized bond hearings after six months, at which point their detention has become prolonged. *Rodriguez*, 2019 U.S. Dist. LEXIS 4228, at *18. That decision noted that this Circuit's primary decisions on prolonged detention, including *Casas*, *Tijani*, and *Diouf*, "invoked the doctrine of constitutional avoidance to imply a statutory right to a bond hearing—a statutory right that does not survive the Supreme Court's holding in *Jennings*—but their reasoning was constitutional in nature." *Id. Rodriguez* found that a bright-line six-month rule aligned with the reasoning of these cases as well as the Supreme Court's decisions in *Zadvydas* and *Demore*. *See id.* at *18-19. Other courts have held that there is no bright-line rule for the duration at which detention becomes constitutionally impermissible. *See, e.g.*, *Gonzalez*, 2019 WL 330906, at *2.

Absent controlling authority establishing a bright-line rule for a due process right to receive periodic bond hearings, the court finds that it is appropriate to conduct an individualized due process analysis under *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Soto v. Sessions*, No. 18-cv-02891-

---

[4] Bent argues that the IJ erred by addressing the ultimate merits of a bond hearing rather than merely considering whether Bent had demonstrated a change in material circumstance. Mot. at 28-29. The court disagrees with Bent's reading of the August 2019 memorandum and finds that it only addressed the materiality of Bent's changed circumstances.

12

EMC, 2018 WL 3619727, at *3 (N.D. Cal. July 30, 2018) (applying *Mathews* factors to a habeas petitioner's due process claims); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 775 (N.D. Cal. 2019) (same); *De Paz Sales*, No. 19-cv-04148-KAW, 2019 WL 4751894, at *7 (N.D. Cal. Sept. 30, 2019) (same); *Jimenez*, 2020 WL 510347, at *2 (same).[5] Under *Mathews*, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." 424 U.S. at 334. The three-part *Mathews* test requires courts to consider "(1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been provided in the particular situation before the court." *Soto*, 2018 WL 3619727, at *3 (citing *Mathews*, 424 U.S. at 334-35).

### 1. Petitioner's Interest

The first factor is straightforward. Courts have held that there is a strong private interest based on the duration of the detention. *De Paz Sales*, 2019 WL 4751894, at *7 (N.D. Cal. Sept. 30, 2019) (finding a strong private interest where the petitioner "risks continued detention absent a bond hearing"). In this case, Bent has been detained for over three years and has not received a bond hearing since November 2017. This period of detention leans heavily toward finding a strong private interest at stake. *Lopez Reyes*, 362 F. Supp. 3d at 776 (finding a strong private interest where the petitioner had been detained 22 months and received his last bond hearing 16 months prior); *cf. Soto*, 2018 WL 3619727, at *3 (finding that the private interest is "not at its apex in these circumstances" because the petitioner had been detained for just over 6 months and had received a bond hearing 3 months prior). Respondents do not dispute that Bent has a strong private interest. Accordingly, the court finds that the first *Mathews* factor weighs in Bent's favor.

### 2. Government's Interest

The second factor addresses the government's interest. Respondents argue that the statutory detention framework grants it "broad discretion" to effect removal proceedings, and that this authority would be undermined by imposing procedures in excess of those authorized by Congress. Resp. Supp. Br. at 3 ("The government's interest in maintaining the existing procedures for bond

---

[5] Courts have applied *Mathews* in evaluating constitutional challenges to both 1226(a) and 1226(c) detentions. *See Gonzalez*, 2019 WL 330906, at *2-3; *Jimenez*, 2020 WL 510347.

13

hearings to ensure that removal orders can be promptly executed is . . . legitimate and significant.") (citing *Demore*, 538 U.S. at 519). The court recognizes that additional court-ordered procedures may disrupt the government's ability to conduct orderly and timely removal proceedings. *See* H.R. REP. 104-469(I) at 122 (noting procedural barriers that frustrate the removal process). The government has therefore articulated an interest in retaining discretion over the grant and denial of bond hearings.[6] This factor weighs in favor of Respondents.

### 3. Additional Procedural Safeguards

Bent seeks additional procedural safeguards in the form of a new bond hearing. Pet. Supp. Br. at 3. He argues that the value of additional safeguards is high because "a material change in circumstances coupled with the passage of time" may entitle a detainee to an additional bond hearing as a matter of due process. *See Lopez Reyes*, 362 F. Supp. 3d at 777. As explained above, the IJ did not err in determining that Bent failed to show a change in material circumstance. Bent does not argue that the "passage of time" alone requires a third bond hearing, nor does he identify any authority to that effect. *See id.* ("The Court notes that it is *not* making a finding that the mere passage of time requires a second bond hearing.").

In sum, Bent has already received two prior bond hearings and has not argued that either hearing was statutorily or constitutionally inadequate. He has failed to show a change in circumstances that was material to the considerations underlying the initial bond determination. Under these circumstances, the added value of a third bond hearing is minimal because there is nothing to suggest that he would "benefit as a practical matter in the circumstances of [his] case." *Soto*, 2018 WL 3619727, at *4.

The court finds that the *Mathews* factors weigh in favor of Respondents and that Bent is not entitled to a third bond hearing as a matter of due process.

//

---

[6] The government also asserts that it has a strong interest in detaining noncitizens who have been convicted of serious crimes. This reason is less compelling. The interest at stake is "the ability to detain Petitioner *without providing him with another bond hearing*, not whether the government may continue to detain him." *Lopez Reyes*, 362 F. Supp. 3d at 777; *see also Jimenez*, 2020 WL 510347, at *3 ("Providing a bond hearing would not undercut the government's asserted interest in effecting removal [because] the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community.").

14

**III. TEMPORARY RESTRAINING ORDER**

In his motion for a TRO, Bent seeks the same relief that he requests in his petition; namely, an order requiring the government to provide him with a bond hearing or a release from custody. His motion for a TRO is therefore denied as moot.

**IV. CONCLUSION**

For the reasons state above, Bent's petition for writ of habeas corpus under 28 U.S.C. § 2241 is denied.

**IT IS SO ORDERED.**

Dated: April 6, 2020

_____
Donna M. Ryu
United States Magistrate Judge