United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CLAUDE BENT,

Plaintiff,

v.

WILLIAM P. BARR, et al.,

Defendants.

Case No. 19-cv-06123-DMR

**ORDER ON PRELIMINARY INJUNCTION**

Petitioner Claude Bent is a foreign national who has been detained in Mesa Verde ICE Processing Facility ("Mesa Verde") pending the resolution of his removal proceedings. On March 27, 2020, Bent filed temporary restraining order ("TRO") seeking release from detention because of the COVID-19 pandemic. The court granted the motion on April 9, 2020 and ordered Respondents to show cause as to why a preliminary injunction should not issue. [Docket No. 26 ("Order on TRO").] Respondents filed a response to the show cause order on April 29, 2020. [Docket No. 40 ("Resp. Br.").] Bent filed a timely reply. [Docket No. 44 ("Pltf. Br.").] This matter is suitable for determination without oral argument. Civil L.R. 7-1(b).

For the reasons stated below, the court finds that Bent is entitled to a preliminary injunction.

## I. BACKGROUND

The factual and legal background of this case is set out in full in the court's order granting Bent's TRO and will not be repeated in full here. In brief, Bent is a 58-year-old Jamaican national who has been in Immigration and Customs Enforcement ("ICE") detention since July 2016. His removal case is ongoing and has involved appeals to and remands from the BIA and Ninth Circuit. On March 27, 2020, Bent filed a motion for a TRO, seeking immediate release from detention due to the COVID-19 pandemic. He represented that he faces particular risk from the virus due to his age and underlying health conditions, which include asthma, hypertension, and prediabetes. The

court granted Bent's TRO, finding that Bent "at least raised serious questions that his continued detention in Mesa Verde during the COVID-19 [pandemic] poses risks that are excessive in relation to the government's legitimate objectives." Order on TRO at 11. The court ordered Bent's immediate release from Mesa Verde, subject to release conditions. [Docket No. 38.]

## II. DISCUSSION

Respondents argue that Bent is not entitled to a preliminary injunction because (1) Bent lacks Article III standing; (2) release from custody is not an appropriate remedy for a conditions of confinement claim; (3) Bent is under mandatory detention; and (4) he does not satisfy the requirements for a preliminary injunction. These arguments are addressed in turn.

### A. Standing

Respondents argue that Bent lacks Article III standing because he has not stated a cognizable injury nor is any alleged injury redressable by the court. This argument repeats the standing argument Respondents raised in their briefing on the TRO and is denied for the same reasons as stated previously. *See* Order on TRO at 5-7.

Further, Defendants' primary objection to standing is that no cases of COVID-19 have been recorded at Mesa Verde, and so Bent's injury is only conjectural and speculative. The court has since received notice that both a medical provider and a GEO officer at Mesa Verde have tested positive for COVID-19. [Docket Nos. 49, 51.] This new information confirms that Bent's asserted injury is "actual or imminent, not conjectural or hypothetical," and that the threatened harm is likely to be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).

### B. Habeas Relief

Respondents reassert their argument that release is not an appropriate remedy when an immigration detainee challenges the conditions of his confinement. The court again rejects this argument. First, the Ninth Circuit's limitations on habeas relief have been specifically directed at state prisoners, not federal prisoners or immigration detainees. *See Nettles v. Grounds*, 830 F.3d 922, 931 (9th Cir. 2016) (noting that the court "need not address how the standard . . . adopted here applies to relief sought by prisoners in federal custody"); *Moore v. Winn*, 698 F. App'x 485, 486

(9th Cir. 2017) (unpublished) (stating that *Nettles* "restricts the scope of habeas jurisdiction for *state* prisoners" (emphasis in original)). *Nettles* did not overrule prior Ninth Circuit precedent permitting habeas relief for federal prisoners where the relief sought would not necessarily result in a speedier release. *See, e.g.*, *Rodriguez v. Copenhaver*, 823 F.3d 1238, 1240 (9th Cir. 2016) (directing district court to grant habeas petition and order the Bureau of Prisons to reconsider a federal prisoner's request to have a credit applied to his sentence); *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000) (noting that federal prisoner petitions that "challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court").

Second, even for state prisoners, the Ninth Circuit has held that "habeas jurisdiction is proper where a challenge to prison conditions would, if successful, necessarily accelerate the prisoner's release." *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003). As previously noted by the Court, Bent does not solely challenge the conditions of his confinement but also the legality of his continued detention during the COVID-19 pandemic. Order on TRO at 4; *see Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus."). To the extent that the reasoning in *Nettles* could be extended to federal detainees, it is inapplicable to habeas petitions like the current one that challenge the validity of confinement.

Finally, *Nettles* contemplated that habeas relief may not be appropriate where there is an alternative remedy (such as a civil rights claim under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)). *Bivens* (the appropriate civil rights vehicle for federal detainees) is "based . . . on the deterrence of individual officers who commit unconstitutional acts" rather than overarching, unconstitutional policies. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) (rejecting a *Bivens* claim challenging "confinement conditions imposed on [immigration detainees] pursuant to a high-level executive policy"). A *Bivens* claim is not clearly available for individuals in Bent's position, where the constitutional violation at issue is not the result of any individual officer's conduct but rather a nationwide policy of detention for individuals at high risk during a global pandemic. The Supreme Court, subsequent to *Nettles*, has explicitly recognized that habeas or

injunctive relief, rather than a *Bivens* claim, is the appropriate redress for "large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners." *Ziglar*, 137 S.Ct. at 1862-63 ("A successful habeas petition would have required officials to place respondents in less-restrictive conditions immediately . . . .").

For the reasons stated above, the court has habeas corpus jurisdiction over Bent's claims.

**C. Statutory Basis for Detention**

Respondents argue that Bent is not entitled to release because he is mandatorily detained under 18 U.S.C. § 1226(c). The court disagrees. Bent raises constitutional challenges to the validity of his confinement. His constitutional rights cannot be abridged by statute, as the court has previously recognized.[1] *See* Order on TRO at 5; *see also Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992), *as amended on denial of reh'g* (Aug. 25, 1992) ("Federal courts possess whatever powers are necessary to remedy constitutional violations because they are charged with protecting these rights."); *Basank v. Decker,* 2020 WL 1481503, at *6 (S.D.N.Y. Mar. 26, 2020) ("[C]ourts have the authority to order those detained in violation of their due process rights released, notwithstanding § 1226(c).").

**D. Preliminary Injunction**

A petitioner seeking a preliminary injunction must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit uses a sliding scale approach to preliminary injunctions, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In addition, courts may evaluate the likelihood of success by considering whether "serious questions going to the merits were raised and the balance of hardships tips sharply in [the plaintiff's]

[1] Respondents are incorrect that the court previously found that Bent is properly detained pursuant to section 1226(c). *See* Resp. Br. at 13. The court explicitly stated that it "need not reach the question of whether Bent is subject to discretionary rather than mandatory detention." Docket No. 24 at 10. Instead, the court determined that Bent had not established a procedural due process right to another bond hearing regardless of whether he is subject to mandatory or discretionary detention.

favor."[2] *Id.*

In its order granting Bent's motion for a TRO, the court found that Bent had raised serious questions that his continued detention in Mesa Verde during the COVID-19 pandemic poses risks that are excessive in relation to the government's legitimate objectives. Order on TRO at 11. The court's holding was based on the seriousness of the "escalating public health crisis, the increased risks posed by detention, and Bent's particular vulnerability." *Id.* Respondents challenge the issuance of a preliminary injunction mainly on the grounds that Mesa Verde has implemented additional safety measures since the court granted Bent's TRO. Alexander Pham, an Assistant Field Office Director with the Department of Homeland Security, submitted a declaration explaining the updated precautionary measures instituted at Mesa Verde. [Docket No. 40-2, Declaration of Alexander Pham ("Pham Decl.").] Pham testifies that Mesa Verde staff have increased sanitation frequency, installed liquid soap dispensers in each dorm, provided sanitation supplies and soap to all detainees, distributed surgical masks to detainees, and required all medical staff to wear N95 masks during all patient encounters. Pham Decl. ¶ 15. Pham also represents that Mesa Verde has reduced its population in two dorms to below 50% capacity, and the detainees in those dorms sleep one to each double bunk, alternating between the top and bottom bunks to promote social distancing. *Id.*

Another court in this district provisionally certified a class of all detainees at Mesa Verde and Yuba County Jail, and granted injunctive relief that establishes a system for the court to order the release of class members on a rolling basis, in consideration of the risks posed to each detainee weighed against the interests of the public and the government. *See Zepeda Rivas v. Jennings*, ___ F. Supp. 3d ___, Case No. 20-cv-02731-VC, 2020 WL 3055449 (N.D. Cal. June 9, 2020). In its order entering a preliminary injunction, the court recognized that "substantial progress has been made" at both detention facilities and while "conditions in the facilities are hardly ideal, . . . they have indisputably improved." *Id.* at *1. However, the court also noted that the safety improvement resulted almost entirely from litigation, and ICE continually showed "disinterest and a lack of

[2] Although *Winters* invalidated a portion of the Ninth Circuit's sliding scale approach, the "serious questions" approach survives *Winter* as long as the petitioner can show the other elements of the *Winter* test are also met. *All. for the Wild Rockies*, 632 F.2d at 1131-32.

dexterity in adjusting its conduct to respond to a global crisis, along with obstinance in evaluating whether any of its detainees can safely be temporarily released." *Id.* at *2. ICE's blanket objections to release "has led it to take some positions that are downright irrational, not to mention inhumane." *Id.* (providing examples). While *Zepeda Rivas* recognized that conditions have improved at Mesa Verde, and that some detainees should not be released due to the danger they pose to society or their flight risk, that decision also calls into serious doubt whether ICE's objections to the release of any particular detainee are consistent with the standards set by courts in this district. *See id.* at *3 ("ICE's conduct and attitude towards its detainees at Mesa Verde and Yuba County Jail since the pandemic began have shown beyond doubt that ICE cannot currently be trusted to prevent constitutional violations at these particular facilities without judicial intervention.").

Both Pham's declaration and *Zepeda Rivas* confirm that conditions have improved at Mesa Verde. However, those improvements are possible in large part because courts have ordered the release of so many detainees. It would be completely counterproductive to revoke release orders on the basis that conditions have improved, since re-detaining those ordered released would impact the social distancing measures Mesa Verde has implemented. *See Zepeda Rivas v. Jennings*, ___ F. Supp. 3d ___, 2020 WL 3055449, at *3 ("[T]he fact that conditions have improved at the facilities does nothing to disturb the Court's conclusion that the requirements for interim relief have been met, and that a preliminary injunction is needed, at a minimum, to lock in place the safety improvements achieved in recent weeks."). Further, as noted above, two staff members at Mesa Verde have tested positive for COVID-19, rendering spread of the virus within the facility an immediate danger. Accordingly, the court once again finds that Bent has raised serious questions that his detention in Mesa Verde during the COVID-19 pandemic poses risks that are excessive in relation to the government's legitimate objectives, and has therefore shown a likelihood of success on the merits.

With respect to irreparable harm, Respondents have not offered new arguments or evidence that undermine the court's prior findings. As explained in the court's prior order, Bent's age and underlying health conditions render him particularly susceptible to COVID-19, a highly contagious and deadly virus. As a person who is at high risk of serious illness or death if infected, Bent is likely

to incur irreparable injury in absence of relief. This is particularly true given that there are now at least two confirmed cases of COVID-19 within Mesa Verde. Even apart from those cases, the threat of the virus continues to grow. Just yesterday, California recorded the highest single-day count of new coronavirus cases of any state in the country.[3] Kern County, where Mesa Verde is located, has over 5,300 confirmed cases and 82 deaths as of July 6, 2020, up from 306 confirmed cases and 2 deaths since the court's prior order.[4] Over 700 of the 22,800 detainees in ICE custody have tested positive for COVID-19.[5] In sum, the threat of irreparable harm continues to weigh strongly in favor of release.

Finally, the court previously found that there was no evidence Bent currently poses a danger to society or a flight risk. Bent was convicted in 2006 for conduct relating to a single incident for which he has served his prison sentence. Respondents have not raised any concerns about Bent's behavior in the last 14 years during his incarceration or since he has been detained. In addition, Bent has been out of detention for almost three months and he and his custodian have filed timely declarations attesting to his compliance with the terms of release, as ordered by the court. In absence of new evidence or arguments on these facts, the court finds that the balance of equities and public interest favor entry of a preliminary injunction.

**E. Additional Release Conditions**

Respondents request that the court modify its release order and impose additional conditions of release. First, Respondents request that Bent submit additional information to the court if he seeks to change the residence where he is sheltering in place. This condition is unnecessary, since Bent is already required to "remain in home detention at [his current residence] until he is returned to ICE detention or upon further order of this court." [Docket No. 38 at 1.] Respondents will have the opportunity to object to any requested change in release conditions if that situation arises.

---

3 U.S. News, *California Records Highest Daily Coronavirus Case Count of Any State* (July 6, 2020), https://www.usnews.com/news/health-news/articles/2020-07-06/california-records-highest-daily-coronavirus-case-count-of-any-state.

4 Kern Cnty. Pub. Health Servs. Dep't, *COVID-19 Dashboard,* https://kernpublichealth.com/covid-19_dashboard (last visited July 6, 2020).

5 U.S. Immigration & Customs Enforcement, *ICE Guidance on COVID-19*, https://www.ice.gov/coronavirus (follow "ICE Detainee Statistics" link) (last visited July 6, 2020).

Second, Respondents request that the court grant ICE authority to immediately detain Bent without advance notice to the court if (1) ICE determines that he has violated a condition of release or (2) his removal order becomes final and ICE obtains a travel document. The court previously rejected such conditions and again finds insufficient cause to impose them. Third, Respondents request that the court order Bent to "self-report to ICE within 24 hours after the lifting of both the shelter-in-place order for the State of California and any shelter-in-place order applicable where he resides in Washington, D.C." The court declines to enter such an order at this time. The lifting of any shelter-in-place orders will not necessarily indicate that conditions in Mesa Verde will be such that detention no longer poses a risk of constitutional deprivation to Bent. Respondents remain free to file a motion demonstrating why conditions have changed to the extent that this injunction should be lifted or modified.

## III. AMENDMENT OF PETITION

Respondents correctly point out that the court denied Bent's habeas petition and first motion for a TRO. Resp. Br. at 10. Bent's initial habeas petition was based on an alleged violation of his procedural due process right to a subsequent bond hearing. *See* Docket No. 1. The court denied the habeas petition and corresponding motion for a TRO on the basis that Bent had not shown he was entitled to a bond redetermination as a matter of due process. *See* Docket No. 24. Respondents appear to argue that it is improper to consider Bent's second motion for TRO because there is currently no habeas petition pending before the court. Upon consideration of relevant authority, the court grants Bent leave to amend his habeas petition to assert that his continued detention during the COVID-19 pandemic violates his substantive due process rights.

Amendment of habeas petitions is governed under Rule 15's liberal amendment standard. *See Obregon v. Sessions*, No. 17-cv-01463-WHO, 2017 WL 3478774, at *2 (N.D. Cal. Aug. 14, 2017). Rule 15 provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(c). District courts have "broad discretion in allowing supplemental pleadings." Fed R. Civ. P. 15, Advisory Committee Notes on 1963 Amendment. Rule 15 is "a tool of judicial economy and convenience . . . [and] [i]ts use is therefore favored." *Keith v.*

*Volpe*, 858 F.2d 467, 473 (9th Cir. 1988); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[W]e have repeatedly stressed that the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." (internal quotation marks and citation omitted)). Factors to consider when considering whether to allow amendment include "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Lyon v. U.S. Immigration & Customs Enf't*, 308 F.R.D. 203, 214 (N.D. Cal. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Further, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quotation omitted).

In this case, Bent filed a habeas petition and TRO asserting that an immigration judge's denial of a subsequent bond hearing violated his due process rights. *See* Docket Nos. 1, 5. Before the court decided the merits of the petition and TRO, Bent filed a second TRO asserting that his continued confinement during the COVID-19 pandemic violated his substantive due process rights. The court then denied his habeas petition and first TRO, and—three days later—granted his second TRO. Notably, before Bent filed his second TRO, he was a plaintiff in another case pending before Judge Chesney. *See Ortuño v. Jennings*, Case No. 20-cv-2064-MMC (N.D. Cal.). The habeas petition in that case was brought on behalf of several foreign nationals detained in Mesa Verde and Yuba County Jail, who alleged violations of their substantive due process rights based on their continued detention during the COVID-19 pandemic. Bent then voluntarily withdrew from that action, apparently to seek the same relief in this case where he already had a pending habeas petition. Notably, Respondents did not object to Bent's second TRO on the basis that it sought relief on grounds that were not present in his initial petition. In fact, Bent filed a motion to dismiss his second TRO, arguing that the matter should be brought before Judge Chesney in *Ortuño*. *See* Docket No. 25. Respondents objected to the motion on the basis that "Petitioner's asserted justification for requesting assignment to Judge Chesney are not valid." *See* Docket No. 32 at 4. Respondents also objected to Bent filing a new habeas petition before Judge Chen. *See id.* at 3.

The purpose of Rule 15 is to promote judicial efficiency. *See Keith*, 858 F.2d at 473. Denying Bent leave to amend his habeas petition at this stage would not serve this purpose. Bent voluntarily withdrew from the case before Judge Chesney to assert the same claim for relief in a case where he already had a pending habeas petition. Resolving all of Bent's claims in a single proceeding before the same judge promotes efficient resolution of this matter. There is no apparent or asserted prejudice to the government, who objected to Bent filing a new habeas petition before Judge Chen and to Bent re-entering the case before Judge Chesney. There is also not undue delay to amendment, since the grounds for Bent's new claims arise from the emergence of COVID-19.

In sum, the court grants Bent leave to amend his habeas petition to assert a violation of his substantive due process rights based on his continued detention during the COVID-19 pandemic. The amended petition serves as the basis for the court's order granting Bent's second TRO and entering a preliminary injunction.

**IV. CONCLUSION**

For the reasons stated above, the court finds Bent is entitled to a preliminary injunction. The terms of the existing order of release shall remain in effect until further order of the court.

Bent shall file an amended habeas petition by no later than July 20, 2020.

**IT IS SO ORDERED.**

Dated: July 6, 2020




Donna M. Ryu
United States Magistrate Judge